IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



DAQUAN CHARLIE BARNER,

    Plaintiff,

v.                                                     Civil Action No. 3:15CV648

SGT. B. ALLEN, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Daquan Charlie Barner, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this civil action under 42 U.S.C. § 1983.[1] The action proceeds on Barner's Particularized Complaint ("Complaint," ECF No. 23.)[2] The Court has construed Barner's Complaint to raise the following claim for relief:

    Claim One:     Sgt. B. Allen[3] violated Barner's rights under the Eighth Amendment[4] when she failed to protect Barner from an assault by Devin Rawls. (*Id.* at 1–2.)

---

[1] That statute provides, in pertinent part:

    Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] Barner's initial Complaint named Sgt. B. Allen and Lt. Robinson as Defendants. (ECF No. 1, at 1–2.) Barner's Particularized Complaint omits any mention of Lt. Robinson. Accordingly, the action proceeds solely against Sgt. B. Allen.

[3] Sgt. B. Allen is an officer at the Southside Regional Jail ("SRJ"). (Compl. 1.)

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

By Memorandum Opinion and Order entered on May 19, 2017, the Court denied the Motion to Dismiss filed by Defendant Allen. *Barner v. Allen*, No. 3:15CV648, 2017 WL 2221703, at *4 (E.D. Va. May 19, 2017.)

The matter is now before the Court on the Motion for Summary Judgment filed by Defendant Allen. (ECF No. 41.) Barner has filed a Response. (ECF No. 47.) Defendant Allen has filed a Reply. (ECF No. 46.) Barner has submitted a Surreply. (ECF No. 49.) Even though Barner filed his Surreply without first obtaining leave from the Court to do so,[5] given his *pro se* status, the Court will consider Barner's Surreply in its analysis of the Motion for Summary Judgment. For the reasons stated below, Defendant Allen's Motion for Summary Judgment will be GRANTED, and Barner's claim will be DISMISSED because he failed to exhaust his administrative remedies.

## I. Summary Judgment Standard

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). "A fact is material if the existence or non-existence thereof could lead a jury to different resolutions of the case." *Thomas v. FTS USA, LLC*, No. 3:13cv825, 2016 WL 3653878, *4 (E.D. Va. June 30, 2016) (citing *Liberty Lobby*, 477 U.S. at 248). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific

---

[5] Rule 7(F)(1) of the Local Rules for the United States District Court for the Eastern District of Virginia explains that after a party files a response brief to a motion, "the moving party may file a reply brief within six (6) calendar days after the service of the opposing party's response brief." E.D. Va. Loc. R. 7(F)(1). "No further briefs or written communications may be filed without first obtaining leave of Court." *Id.*

facts illustrating genuine issues for trial. *Celotex Corp.*, 477 U.S. at 322–24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Liberty Lobby*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323–24). The ultimate inquiry in examining a motion for summary judgment is whether there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted).

Defendant Allen asks the Court to dismiss Barner's claim because Barner failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Defendant Allen bears the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In support of her Motion for Summary Judgment, Defendant Allen submits: (1) a copy of the Southside Regional Jail Inmate Handbook (Mem. Supp. Mot. Summ. J. Attach. 1 ("Inmate Handbook"), ECF No. 42–1); (2) a copy of Barner's "keep separate" list (*id.* ("Keep Separate List")); (3) copies of grievances submitted by Barner (*id.* ("Grievance Material")); (4) copies of the Incident Reports regarding Devin Rawls' assault on Barner (*id.* ("Incident Reports")); (5)

3

copies of Barner's medical records (*id.* ("Medical Records")); (6) an affidavit from Lieutenant Michael Strickland, the acting Records Manager at SRJ (*id.* Attach. 2 ("Strickland Aff."), ECF No. 42–2); (7) Defendant Allen's affidavit (*id.* Attach. 3 ("Allen Aff."), ECF No. 42–3); and, (8) an affidavit from Captain Anthony Johnson, the acting Chief of Security at SRJ (*id.* Attach. 4 ("Johnson Aff."), ECF No. 42–4).

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. With his Response, Barner provided no affidavits but did submit copies of three grievances. (Pl.'s Resp. Exs. 1 through 3, ECF No. 47–1.) Moreover, while Barner signed his Complaint "under penalty of perjury," (Compl. 3), he declared "that the facts and the law in the foregoing particularized complaint are true and correct according to the best of my knowledge and belief." (Compl. 3.) Such a statement fails to transform the statements in the Complaint into admissible evidence. *Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, at *2–3 & n.5 (E.D. Va. June 1, 2011) (treating statements sworn to under penalty of perjury, but made upon information and belief as "mere pleading allegations" (quoting *Walker v. Tyler Cty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2001))). Therefore, the matters referred to as "on information and belief" will not be afforded evidentiary effect. Accordingly, the only evidence provided by Barner in opposition to the Motion for Summary Judgment are the copies of the three grievances attached to his Response.

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Barner.

4

## II. Relevant Facts

### A. Facts Underlying Barner's Claim

On January 11, 2015, inmate Devin Rawls was added to Barner's Keep Separate List at SRJ. (Keep Separate List at 33.)[6]

On January 25, 2015, Defendant Allen "was working as a booth officer in the control room that oversees ingress and egress into certain housing areas at the Jail, including HA–300 and HA–400." (Allen Aff. ¶ 5.) On that date, Rawls "was housed in HA–300 and Barner was housed in HA–400." (*Id.* ¶ 6.)

"At approximately 9:00 a.m., inmate visitation was ongoing, and [Defendant Allen] was operating slider doors to facilitate inmate movement to and from visitation." (*Id.* ¶ 7; *see* Incident Reports at 38, 40.) Lieutenant Robinson, the Watch Commander at SRJ, was in the control booth with Defendant Allen. (Allen Aff. ¶ 7.) Officer Smalls "was standing outside the slider door to the visitation area waiting to receive two inmates who had scheduled visitation: inmate Calvin Kelly . . ., who was housed in HA–400, and Rawls, who was housed in HA–300." (*Id.*; *see* Incident Reports at 38.) At the same time, Barner was in the day room area of HA–400. (Allen Aff. ¶ 8.) Defendant Allen did not know that Barner was in the day room area. (*Id.*)

"Rawls and Kelly were put on standby, at which point [Defendant Allen] opened the slider doors to both HA–300 and HA–400 to facilitate Rawls' and Kelly's movement to visitation." (*Id.*) Defendant Allen "observed Rawls begin to run towards HA–400. At the same time, Lt. Robinson yelled, 'Shut the door!' [Defendant Allen] immediately attempted to secure the door to HA–400, but Rawls entered HA–400 before [she] was able to do so." (*Id.*; *see*

---

[6] The Inmate Handbook, Keep Separate List, Grievance Material, Incident Reports, and Medical Records are all located at ECF No. 42–1. For ease of reference, the Court employs the "SRJ" numbering at the bottom of each page, which is the pagination assigned to these exhibits by SRJ.

Incident Reports at 38, 40.) Defendant Allen then "overrode all doors to enable Jail Officers to enter the HA-400 day room[, where] Rawls and Barner were fighting. Lt. Robinson and Ofc. Smalls quickly restrained Rawls and Barner." (Allen Aff. ¶ 9; *see* Incident Reports at 38–40.) Both Barner and Rawls refused medical treatment. (Incident Reports at 38–40.) Rawls received an institutional charge for Assault Upon Any Person. (*Id.* at 38, 40.)

When Defendant Allen opened the slider doors to HA–300 and HA–400, she did not know that Rawls had been recently added to Barner's keep separate list. (Allen Aff. ¶¶ 10, 12.) She also did not know that Barner was in the day room and did not know that Rawls would run into HA–400 to fight Barner. (*Id.* ¶ 12.) Defendant Allen "forgot to check Rawls' enemy list before opening the slider doors to HA–300 and HA–400." (*Id.* ¶ 11.) "If [she] had known that Rawls had an enemy in HA-400, [she] would not have opened the slider doors to HA–300 and HA–400 simultaneously." (*Id.*)

"Immediately after Barner and Rawls were separated, Lt. Robinson asked [Defendant Allen] if [she had] checked the enemy list, and [Defendant Allen] told Lt. Robinson that [she] forgot to check Rawls' list; that [she] made a mistake in not checking the list; and that this mistake was unintentional." (*Id.* ¶ 13; *see* Incident Reports at 40.) Lieutenant Robinson advised Defendant Allen "to always check the enemy list and make sure an officer is present before the sliders are opened." (Incident Reports at 40.)

### B. SRJ's Grievance Procedure

At SRJ, the grievance procedure is stated in the Inmate Handbook. (Johnson Aff. ¶ 7; Inmate Handbook at 15.) Barner received a copy of the Inmate Handbook on December 11, 2014. (Johnson Aff. ¶ 8; Inmate Handbook at 29–30.)

An inmate wishing to submit a grievance "must request a Grievance Form between 5:30 a.m. to 8:00 a.m. from the Housing Unit Officer." (Inmate Handbook at 15.) The form must be

completely filled out. (*Id.*) All grievance forms are picked up once per day between 11:30 p.m. and 8:00 a.m. (*Id.*) Only originals of the form are accepted. (*Id.*)

All completed grievance forms are given to the Shift Commander, unless they are related to medical or dental care. (*Id.*) In that case, they are given to the Head of the Medical Department. (*Id.*) Written responses are provided within nine days of receipt. (*Id.*) The response informs the inmate "what actions are being taken to handle [his or her] complaint." (*Id.*) The inmate will also be informed in writing if the grievance is deemed invalid. (*Id.*)

An inmate who is dissatisfied with a response to a grievance may appeal to the Chief of Security or Chief of Operations unless they are involved. (*Id.*) The Assistant Superintendent hears appeals of grievances involving the Chiefs of Security and Operations. (*Id.*) "In addition to being stated in the Inmate Handbook, the appeal procedure is conspicuously stated in capital letters at the bottom of the form. Once an appeal has been submitted, the inmate has exhausted his available administrative remedies." (Johnson Aff. ¶ 7.)

### C. Facts Pertaining to Barner's Exhaustion of Administrative Remedies

On January 25, 2015, Barner submitted his first grievance in which he mentioned that he had hit his head on the floor during the altercation with Rawls. (Pl.'s Resp. Ex. 1, ECF No. 47–1, at 1.) On February 6, 2015, an officer responded to the grievance and noted that Barner had been seen in medical on January 29, 2015 and had been prescribed Motrin as needed for pain. (*Id.*) The responding officer also stated that Barner had denied initial medical treatment after the incident. (*Id.*) The record does not reflect that Barner appealed this response.[7] (*See id.*)

On January 28, 2015, Barner submitted a second grievance in which he asked for information concerning which officer allowed Rawls to enter Barner's housing unit even though

---

[7] The section on the grievance form for the inmate to sign if he or she wishes to appeal is blank. (Pl.'s Resp. Ex. 1, ECF No. 47-1, at 1.)

7

Rawls was on Barner's keep separate list. (Pl.'s Resp. Ex. 2, ECF No. 47–1, at 2.) On February 6, 2015, the responding officer told Barner that Defendant Allen had been operating the doors to allow inmates out for visitation. (*Id.*) The responding officer explained that Barner had received and completed a criminal complaint form that authorities provided to the court that was handling the matter and confirmed that Barner and Rawls were on each other's keep separate lists. (*Id.*) The record does not reflect that Barner appealed this response. (*See id.*)

On January 28, 2015, Barner submitted a third grievance in which he complained that on January 25, 2015, Lieutenant Robinson failed to take Barner to medical after discovering his injuries and instead offered him drugs. (Grievance Material at 37.) Nurse Justice responded on January 29, 2015, noting that Barner had been seen in medical on January 29, 2015 after receiving a health request. (*Id.*) Nurse Justice explained to Barner "that the correct procedure was followed by all involved once [Barner] refused medical treatment." (*Id.*) "Barner could have appealed this response, but he did not do so." (Johnson Aff. ¶ 9.)

On January 31, 2015, Barner submitted a fourth grievance concerning Lieutenant Robinson's actions. (Grievance Material at 36.) On February 2, 2015, the responding officer noted that Barner's grievance was "already answered. See grievance dated 1–28–15. Answered on 1–29–15." (*Id.*) Again, Barner could have appealed, but he did not. (Johnson Aff. ¶ 10.)

On February 3, 2015, Barner submitted a fifth grievance in which he asked if it would be possible for him to receive health services for his injuries without being charged. (Pl.'s Resp. Ex. 3, ECF No. 47–1, at 3.) Barner stated that he could not chew on the left side of his mouth without experiencing pain and that he was having severe headaches. (*Id.*) On February 6, 2015, the responding officer noted that Barner was seen by medical on January 29, 2015 at no cost to him, and that he was prescribed 400mg of Motrin to take twice a day, "per [his] request at pill-call . . . also at no cost to [Barner]." (*Id.*) The responding officer noted that Barner had not

8

asked for the Motrin "[a]t this time," thus he would need to submit a Health Services Request to be seen at his cost. (*Id.*) The record does not reflect that Barner appealed this response. (*See id.*)

On April 1, 2015, Barner submitted his sixth grievance, asking whether Rawls would be required to pay the $35.00 copayment Barner needed to pay in order to see the institutional psychiatrist. (Grievance Material at 35.) On April 3, 2015, Nurse Justice responded, explaining that "[t]he inmate handbook does not state that another inmate will be responsible for your medical fees." (*Id.*) Again, Barner could have, but did not, appeal this response. (Johnson Aff. ¶ 11.)

Captain Johnson avers that "Barner has not exhausted his administrative remedies related to the January 25, 2015 incident with respect to any grievance." (*Id.* ¶ 14.)

### III. Exhaustion Analysis

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "'so that the agency addresses the issues on the merits.'" *Id.*

9

(quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Here, Barner clearly failed to exhaust his administrative remedies with regard to his claim. As explained above, Barner filed six grievances concerning the altercation with Rawls that occurred on January 25, 2015. Five of these grievances concerned Barner's medical care after the incident. Only one grievance concerned the identity of the officer who opened the doors between Rawls' and Barner's housing units. Barner never exercised his right to appeal any of the responses to these six grievances.

The Court construes Barner to raise one argument for excusing his failure to exhaust his administrative remedies. In his Surreply, Barner argues that Captain Johnson "disregarded [Barner's] vain attempts to continue to pursue and exhaust [his] remedies." (Surreply 2, ECF No. 49.) Barner apparently believes that Captain Johnson frustrated his ability to exhaust his remedies. (*Id.* at 2–3.)

Although "an administrative remedy is not considered to have been available if a prisoner, through no fault of his [or her] own, was prevented from availing himself [or herself] of it," *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citations omitted), Barner fails to demonstrate that he was somehow prevented from pursuing appeals of his grievances. Section "1997e(a) does not permit the court to consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are 'available.'" *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002) (citation omitted); *see Ross v. Blake*, 136 S. Ct. 1850, 1856–59 (2016) (discussing when administrative procedures are unavailable to an inmate). To excuse compliance with a grievance system, courts have required an inmate show that he or she

was prevented from filing a grievance by affirmative action on the part of prison officials. *Graham v. Cty. of Gloucester, Va.*, 668 F. Supp. 2d 734, 738 (E.D. Va. 2009) (citing *Brown v. Croak*, 312 F.3d 109, 112–13 (3d Cir. 2002); *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000); *Born v. Monmouth Cty. Corr. Inst.*, No. 07-3771, 2008 WL 4056313, at *3–4 (D.N.J. Aug. 28, 2008)), *aff'd sub nom. Graham v. Gentry*, 413 F. App'x 660 (4th Cir. 2011).

Barner fails to provide any evidence that Captain Johnson, or any other officer at SRJ, affirmatively prevented him from appealing his grievances or pursuing a grievance challenging Defendant Allen's alleged unconstitutional actions. Barner's subjective belief about the availability of the grievance system fails to excuse his lack of exhaustion. *Lyon*, 305 F.3d at 809. The record therefore establishes that Barner failed to comply with 42 U.S.C. § 1997e(a). *See Woodford*, 548 U.S. at 90. Accordingly, Barner's claim will be DISMISSED WITHOUT PREJUDICE. *See Duncan v. Clarke*, No. 3:12CV482, 2015 WL 75256, at *9 (E.D. Va. Jan. 6, 2015) (explaining that "the normal remedy for a failure to exhaust under § 1997e(a) is dismissal without prejudice" (citing *Booth*, 532 U.S. at 735)).

## IV. Conclusion

Accordingly, the Motion for Summary Judgment (ECF No. 41) will be GRANTED. Barner's claim will be DISMISSED WITHOUT PREJUDICE. Barner remains free to file a new complaint once he has properly exhausted his administrative remedies with respect to his claims. The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

/s/ M. Hannah Lauck
United States District Judge

Date: SEP 0 6 2017
Richmond, Virginia

11